**SIGNED THIS: April 17, 2015**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 11-72074 |
| STEVEN J. BARFIELD, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is a Motion to Amend or Alter Judgment or for New Trial filed by Jeana K. Reinbold, successor Chapter 7 Trustee. The successor Trustee seeks relief from an order of this Court denying her previously filed Motion to Confirm and Pay related to an unauthorized sale of estate property by her predecessor. For the reasons set forth herein, the Motion to Amend or Alter Judgment or for New Trial will be denied.

## I. Factual and Procedural Background

The long history of this troubling case is set forth in detail in this Court's prior Opinion and need not be repeated in full here. *See In re Barfield*, 2015 WL 401308, at *1-5 (Bankr. C.D. Ill. Jan. 29, 2015). The relevant facts will be briefly summarized.

Steven J. Barfield ("Debtor") filed his Chapter 7 petition on August 8, 2011. He scheduled ownership of a fifty percent interest in Quality Turbine and Repair, Inc. ("Quality Turbine"), and identified Dustin Beck as the owner of the other half of the business. The Debtor also scheduled ownership of a 2008 Dodge truck valued at $20,000 and tools and equipment valued at $10,000. The Debtor claimed a $2400 exemption in his truck and $5250 in exemptions in the tools and equipment. No objections were filed as to the Debtor's exemption claims.

James R. Inghram was appointed trustee in this case. On March 21, 2012, Mr. Inghram filed a notice of intent to sell the Debtor's truck and his tools and equipment at a public auction scheduled for April 21, 2012. The notice provided that creditors and parties in interest had until April 13, 2012, to object to the proposed sale. On the last day of the objection period, Dustin Beck filed an objection to the sale of the tools and equipment claiming that some of the items proposed to be sold were actually the property of Quality Turbine and not the Debtor. Along with his notice of intent to sell, Mr. Inghram filed a notice of intent to abandon the estate's interest in the Debtor's Quality Turbine stock. No objections to the abandonment were filed and the abandonment was effective April 14, 2012.

On April 16, 2012, this Court entered an order notifying the parties that a hearing on Dustin Beck's objection to the proposed sale could not be scheduled before the sale date and setting a hearing for April 26, 2012. Two days later, Mr. Inghram and Attorney Mark Thielen, Dustin Beck's attorney, uploaded a proposed agreed order which allowed the public sale to proceed notwithstanding the pending objection and provided, *inter alia*, that upon presentation of proof that some of the items sold were the property of Quality Turbine, proceeds from those items would be distributed to Mr. Thielen. Because the order purported to resolve issues not before the Court and attempted to do so without notice to other parties in interest, Mr. Inghram and Mr. Thielen were notified that the proposed agreed order would not be signed.

At the April 26th hearing, Mr. Inghram advised the Court that notwithstanding the pending objection and the Court's express refusal to sign the order authorizing the sale to go forward, he had gone ahead with the public sale. He stated that he believed that all he needed was Mr. Thielen's consent and having received that, he saw no reason not to proceed. The Court expressed concern about Mr. Inghram's legal analysis and found that because the sale had already occurred, the issues raised by the notice of intent to sell and Dustin Beck's objection were moot.

In May 2012, Mr. Inghram filed a report of sale regarding the public sale and sought approval of compensation for his auctioneer. The Court directed Mr. Inghram to file a memorandum of law providing authority for the approval of fees and costs incurred in an unauthorized sale. Instead of filing the requested

memorandum of law, Mr. Inghram withdrew his report of sale and his application to compensate the auctioneer.

Nearly a year later, in April 2013, Mr. Inghram filed an adversary complaint against Quality Turbine and Dustin Beck seeking to determine the nature and extent of their interests in the proceeds from the sale of the tools and equipment. The adversary complaint alleged that the exact interest of Quality Turbine in the assets sold could not be determined but then went on to propose that the corporation's interest in the sale proceeds be fixed at $2238.50. Subsequently, Mr. Inghram asked for leave to file an amended complaint which requested that the unauthorized public sale be retroactively approved. When the Court questioned whether the filing of an adversary complaint against Quality Turbine and Dustin Beck would be the correct procedure to seek the requested relief, Mr. Inghram withdrew his request to amend and then voluntarily dismissed the adversary proceeding.

In November 2013, Mr. Inghram filed a notice of intent to sell listing each item of the Debtor's tools and equipment separately and proposing to sell each item at private sale to named buyers for specified prices. Mr. Inghram also filed a motion to compromise with Dustin Beck proposing to pay Mr. Beck $2238.50 for Quality Turbine's interest in the property sold at the April 2012 public sale. Because the notice of intent to sell appeared to be an attempt to obtain approval to sell items which actually had been sold more than a year before, a hearing was set on the sale notice and the compromise motion.

Prior to the scheduled hearing, the United States Trustee ("UST") filed a

notice of appointment of successor trustee, removing Mr. Inghram from the case and appointing Jeana K. Reinbold as his successor. Because of his removal from the case, Mr. Inghram's pending motion to compromise and his notice of intent to sell were denied without prejudice.

After what she characterized as an "extensive review" of the April 2012 sale, Ms. Reinbold filed her Motion to Confirm and Pay wherein she asked for confirmation of the public sale and authority to pay Quality Turbine $2238.50 for its property which had been sold and to distribute $7650 to the Debtor for his exemptions. In her memorandum of law filed in support of her Motion to Confirm and Pay, Ms. Reinbold argued that Mr. Inghram was fully authorized to proceed with the April 2012 public sale despite the pending objection because Dustin Beck's attorney had agreed to the sale going forward. She also argued that Mr. Inghram and Mr. Beck had entered into a binding agreement regarding the interest of Quality Turbine in the property sold at the public sale and asserted that the agreement was enforceable despite the lack of notice to the Debtor and other parties in interest and the express rejection of the agreement by this Court prior to the sale. The Debtor responded to the Motion to Confirm and Pay by affirmatively requesting that his exemptions be paid to him. Dustin Beck responded by asserting that his deal with Mr. Inghram was binding on the Court and should be enforced but also by asking that the April 2012 sale be declared void.

In an Opinion and Order entered January 29, 2015, this Court denied the Motion to Confirm and Pay in all respects. *Barfield*, 2015 WL 401308, at *14. This

Court found that Mr. Inghram had failed to follow the mandates of the Code and Rules with respect to the April 2012 sale and therefore was not authorized to proceed to sell either property of the estate or property of Quality Turbine. *Id.* at *8-10. This Court also found that Mr. Inghram had no authority to enter into an agreement with Dustin Beck regarding the disposition of any proceeds that might ultimately be payable to Quality Turbine. *Id.* at *9. And this Court concluded that Mr. Beck, as only a fifty percent shareholder of Quality Turbine, did not appear to have authority to bind the corporation without notice to the Debtor who had regained control of his interest in the corporation when Mr. Inghram abandoned his stock back to him. *Id.* Finally, this Court declined to authorize any payments from funds held by Ms. Reinbold, including disbursements from the proceeds from the sale of the Debtor's truck. Although obviously incomplete, the sale information provided by Ms. Reinbold suggested that the Debtor's truck was sold for less than the amount necessary to pay the secured debt on the truck, the Debtor's exemption, and the sale costs. *Id.* at *11. Ms. Reinbold's claim that she was holding surplus funds from the truck sale did not appear to be accurate and without a complete accounting, this Court held that it could not authorize any disbursements. *Id.* at *10-12.

      Ms. Reinbold timely filed her Motion to Amend or Alter Judgment or for New Trial ("Motion to Amend"). In her Motion to Amend, she claims that the Court improperly found that some of the property sold at the April 2012 sale was not property of the estate and argued that an evidentiary hearing must be held to correct that error. Ms. Reinbold states that contrary to her representations in the

Motion to Confirm and Pay, she now believes that Quality Turbine had no interest in any of the tools and equipment sold at the public sale. She argues that if she is given the opportunity to prove that fact, then Mr. Inghram's previously unauthorized sale could be approved *nunc pro tunc*. Finally, in her memorandum of law filed in support of the Motion to Amend, Ms. Reinbold asserts that under basic trust law, a successor trustee is not liable for breaches of duty committed by a predecessor. Following that principle, she argues that she is also not bound by the acts of her predecessor and she should be able to wipe the slate clean and obtain approval of the sale of estate property in April 2012.

Other parties in interest were given an opportunity to respond to the Motion to Amend but no responses were filed. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues presented here pursuant to 28 U.S.C. §1334. Resolution of disputes relating to the administration of the estate, the allowance of exemptions, and the sale and distribution of estate property are core proceedings. 28 U.S.C. §157(b)(2)(A), (B), (N), (O).

## III. Legal Analysis

Trustees may sell property of the estate outside of the ordinary course of business "after notice and a hearing[.]" 11 U.S.C. §363(b)(1). "After notice and a hearing" is a defined phrase in the Code and "means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing

as is appropriate in the particular circumstances[.]" 11 U.S.C. §102(1)(A). Thus the general rule is that obtaining authority to sell estate property requires both notice and a hearing.

An exception to the general rule, however, provides that when proper notice is given and no party in interest objects to the sale, no actual hearing is required. 11 U.S.C. §102(1)(B)(i). This exception applies only in the absence of an objection. When such an objection is filed, a hearing must be held.[1] An objection to a proposed sale is treated as a contested matter. Fed. R. Bankr. P. 6004(b), 9014. A proposed sale may not go forward before the hearing except upon express court authorization. 11 U.S.C. §102(1)(B)(ii).

In her Motion to Amend, Ms. Reinbold raises a series of questions to suggest that if the objection to the public sale filed by Dustin Beck was, in her word, "bogus" and would not have been sustained after hearing, then Mr. Inghram actually had authority to proceed with the sale notwithstanding the pending objection. Alternatively, Ms. Reinbold claims that if she can now prove that Dustin Beck's objection was without merit, then an order authorizing the public sale *nunc pro tunc* would be appropriate. Both of Ms. Reinbold's arguments must be rejected.

---

[1] The statute actually says that a hearing is not required if "such a hearing is not requested[.]" 11 U.S.C. §102(1)(B)(i). Rule 6004(b) says that when an "objection" is filed, it is "governed by Rule 9014." Fed. R. Bankr. P. 6004(b). Rule 9014, in turn, refers to the "opportunity for a hearing[.]" Fed. R. Bankr. P. 9014(a). Thus it appears that raising an objection constitutes a request for hearing as contemplated by the statute. Here, the distinction, if any, is not relevant because the objection filed by Dustin Beck specifically requested a hearing.

The Code requirements for a Chapter 7 trustee to obtain authority to sell estate property are unambiguous. A hearing is required unless no objection to the proposed sale is filed. 11 U.S.C. §§102(1), 363(b). No authority exists for a trustee to weigh the merits of an objection unilaterally and to decide that a hearing is not necessary. To the contrary, even when an act "must be done" by reason of some exigent circumstance before a hearing can be held, express court approval is still required before a trustee may proceed. 11 U.S.C. §102(1)(B)(ii); *see In re Jones*, 2011 WL 3320504, at *2 n.6 (Bankr. D. Or. Aug. 2, 2011). Here, Mr. Inghram's request for an order authorizing him to proceed while the objection was pending was expressly rejected by this Court. Mr. Inghram had no authority to proceed with the public sale regardless of the merits of Dustin Beck's objection. And sorting out the merits of the objection at this late date, as Ms. Reinbold now wants to do, would be meaningless. Retroactive relief is not appropriate here.

*Nunc pro tunc* relief is generally granted to correct clerical, typographical, or ministerial errors so that official records reflect what was actually done or intended to be done by a court at an earlier time but was not accurately and timely recorded or documented. *See United States v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007). *Nunc pro tunc* relief is not granted to rewrite history. *Id.*; *In re Trahan*, 460 B.R. 207, 211 (Bankr. C.D. Ill. 2011). Mr. Inghram admits that he made the decision to proceed with the public sale knowing that Dustin Beck's objection was pending and that the Court had rejected the proposed agreed order authorizing the sale to go forward. However improvident that decision turned out to be, it is not the type of error that can be remedied by a *nunc pro tunc* order. Mr.

Inghram made a flawed but conscious decision when he went forward with the public sale in April 2012; the equitable powers of this Court cannot be used to rewrite the consequences of that decision.

In her memorandum of law filed in support of her Motion to Amend, Ms. Reinbold states that "[a]s a general principle of fiduciary law, successor trustees are not liable for breaches committed by predecessor trustees[.]" That may well be true but it is also irrelevant to the inquiry here. To date, no one, including Mr. Inghram, has been charged with — let alone held liable for — any breach of fiduciary duty in this case. And in large measure, the decision on whether to make such a charge rests with Ms. Reinbold.

What Ms. Reinbold really seeks is a determination that she is not bound by the actions of her predecessor. She wants to wipe the slate clean and start over with the sale process. But because a bankruptcy estate is a continuing entity even when the official representative of the estate changes, a Chapter 7 trustee is bound by the acts of a predecessor Chapter 7 trustee and, frequently, by the acts of a predecessor Chapter 11 debtor-in-possession. *See* 11 U.S.C. §§323, 325; *Davis v. Sunflower Bank, N.A. (In re A-1 Plank & Scaffold Mfg., Inc.*), 2013 WL 3851277, at *5 (Bankr. D. Kan. July 23, 2013); *In re Bettis*, 97 B.R. 344, 346-48 (Bankr. W.D. Tex. 1989). Just as Ms. Reinbold cannot rewrite the history of this case with a *nunc pro tunc* order, her appointment as successor trustee cannot be used to create the fiction that her predecessor's unauthorized actions never occurred.

Ms. Reinbold contends in her Motion to Amend that this Court did not give

her a "fair opportunity" to present evidence in support of her Motion to Confirm and Pay. She makes this allegation although she never requested an evidentiary hearing and, more importantly, despite the fact that she now wants to present evidence in direct contradiction to the factual allegations she actually made in her Motion to Confirm and Pay.

In her Motion to Confirm and Pay, Ms. Reinbold stated that she had completed an "extensive review of the accounting and property sold" at the public sale. Based on that review, she claimed that the estate should pay Quality Turbine $2238.50 for its interest in the assets sold. Ms. Reinbold acknowledged that Dustin Beck was only a fifty percent owner of Quality Turbine. Nevertheless, she asserted that an enforceable agreement had been reached on behalf of the corporation despite the lack of notice to other parties and the express rejection of the proposed agreed order by this Court. Ms. Reinbold admitted that a motion to compromise with Quality Turbine had never been filed, much less approved, but nevertheless suggested that her proposed payment to Quality Turbine was so obviously appropriate that this Court could and should approve it without delay.

This Court rejected almost all of the factual and legal assertions in Ms. Reinbold's Motion to Confirm and Pay and declined to grant any of the relief she requested. Contrary to Ms. Reinbold's allegation now, the Opinion and Order were not based on a finding or belief that Mr. Inghram actually sold non-estate property. Rather, the Court found, as it does here again, that once Dustin Beck's objection was filed, a hearing was required in order for Mr. Inghram to obtain authority to sell any property. This Court held in April 2012 that the sale rendered

a decision on the objection moot and the Court's position remains the same today. There is no need to reach the issue of whether Dustin Beck's objection had merit in order to resolve the issue of whether Mr. Inghram could proceed with the proposed sale in the face of the pending objection. Mr. Inghram was not authorized to proceed with the sale and that ends the analysis.

Ms. Reinbold's belated request for a hearing now is confusing because she apparently wants to present proof that Quality Turbine had no interest in the tools and equipment sold by Mr. Inghram and proof that Dustin Beck had no standing to raise an objection to the sale. But her total change in position is not a basis to amend the prior Opinion and Order. If an evidentiary prove-up had been required prior to a decision being issued on the Motion to Confirm and Pay, Ms. Reinbold most likely would have presented evidence in support of her position that $2238.50 was due to Quality Turbine and that she should be authorized to pay that amount. Her allegation that the Court erred in not hearing that evidence, which she now disavows, is not persuasive. As set forth above, the allegations regarding the ownership of the tools and equipment, either way, were not considered in the Court's decision making. The Court denied the Motion to Confirm and Pay as a matter of law. There is no reason to conduct a hearing to determine whether it also should have been denied as a matter of fact.

### IV. Conclusion

In her Motion to Amend, Ms. Reinbold states that she does "not disagree with much" of the Court's prior Opinion. Rather, the bulk of the arguments in her

Motion to Amend constitute an attempt to disavow the factual allegations she made in her Motion to Confirm and Pay. Ms. Reinbold has changed her mind about what the evidence shows and she does not want to be bound by admissions she may have made. Unfortunately, she has chosen to characterize her change in position as error by the Court despite the fact that this Court never made the factual findings about which she complains.

Ms. Reinbold continues to resist the reality that this Court cannot fashion an easy or simple remedy for what occurred here. She persists in complaining to the Court that if she is bound by Mr. Inghram's conduct, she may not be able to correct his errors. Her repeated prayer is that his conduct and her actions so far should not prohibit her from filing other motions or adversary complaints. She requests a finding that nothing that has occurred to date in the case will have a *res judicata* effect or will constitute an equitable bar to anything else she might file. But her complaints do not entitle her to the relief she requests.

Mr. Inghram conducted an unauthorized sale. He has admitted that he conducted an unauthorized sale. The UST has acknowledged that he conducted an unauthorized sale. Mr. Inghram was removed as trustee by the UST and Ms. Reinbold was appointed successor trustee by the UST because he conducted an unauthorized sale. What happened, happened; the facts are not going to change or be rewritten. This Court cannot state the required result here any more clearly or unequivocally. Ms. Reinbold's Motion to Confirm and Pay was properly denied and her Motion to Amend must also be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law

-13-

pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

    See written Order.

###